**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq. (SBN 227896)
100 N. Citrus Street, Suite 408
West Covina, CA 91791
Telephone: (800) 787-5616 | Fax: (888) 909-7947
sk@consumerlitigationlawcenter.com

Attorney for Plaintiff,
Martha Alvarez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA ALVAREZ, an individual, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO BANK SOUTHWEST, N.A. f/k/a WACHOVIA MORTGAGE, FSB f/k/a WORLD SAVINGS BANK, FSB; CAL-WESTERN RECONVEYANCE CORPORATION, a California Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive, <br><br> Defendants. | CASE NO: 2:12-cv-09661-PA (RZx) <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing Date:** <br> **Date:** January 21, 2013 <br> **Time:** 1:30 p.m. <br> **Judge:** Hon. Percy Anderson <br> **Ctrm:** 15 |

1

**CASE NO. 2:12-cv-09661-PA (RZx)**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER. APC

1       Plaintiff, MARTHA ALVAREZ, herein submits her opposition to Defendant

2   WELLS FARGO BANK, N.A., successor by merger to WELLS FARGO BANK

3   SOUTHWEST, N.A., f/k/a WACHOVIA MORTGAGE, FSB f/k/a WORLD

4   SAVINGS BANK, FSB'S ("WELLS FARGO") motion to dismiss her first

5   amended complaint ("FAC").  Plaintiff opposes Defendant's motion to dismiss on

6   the grounds that her FAC does state valid causes of action and that Defendant's

7   motion to dismiss is without merit.

8       The opposition shall be based on this opposition, the attached memorandum

9   of points and authorities, on the complete files and records of this action and on

10  such other oral and/or documentary evidence as may be presented at the hearing on

11  the motion.

12

13  Dated:  January 7, 2013          CONSUMER LITIGATION
                                    LAW CENTER, APC
14

15

16                    BY:  _/s/ September J. Katje_____
                                    September Katje
17                                  Attorney for Plaintiff,
                                    Martha Alvarez
18

19

20

21

22

23

24

25

26

27

28

**CASE NO. 2:12-cv-09661-PA (RZx)**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER. APC

1

# **TABLE OF CONTENTS**

2  1.    INTRODUCTION .......................................................................................1

3  2.    STATEMENT OF FACTS.........................................................................1

4  3.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY HOLA ...................2

5  4.    PLAINTIFF STATED A CLAIM FOR FRAUD. ........................................4

6      A.    Plaintiff's Fraud Claim is Timely. ........................................................4

7      B.    Defendant Misrepresented the Terms of the Loan...............................5

8  5.    PLAINTIFF STATED A CLAIM FOR BREACH OF THE IMPLIED

9      COVENANT ............................................................................................6

10  6.    PLAINTIFF STATED CLAIMS FOR VIOLATION OF BUSINESS AND

11      PROFESSIONS CODE §§ 17200, ET SEQ. .............................................7

12      A.    The Claims are Not Preempted ...........................................................7

13      B.    Plaintiff Stated Claims for Violation of Business and Professions

14            Code 17200 with Particularity.............................................................7

15            1.  Violation During the Loan Origination ...........................................7

16            2.  Violation During the Loan Servicing ..............................................8

17            3.  Violation During the Foreclosure Process......................................9

18      C.    The First Cause of Action is Not Time-Barred...................................9

19  7.    PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF ...............................10

20      A.    Plaintiff Should Not Be Required to Allege Tender ...........................10

21      B.    Plaintiff Stated a Claim for Declaratory Relief..................................10

22      C.    Plaintiff Stated a Claim for Quiet Title...............................................11

23      D.    Each Equitable Claim has a Basis for Granting Relief .......................12

24  8.    CONCLUSION .......................................................................................12

25

26

27

28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSUMER LITIGATION LAW CENTER. APC

# TABLE OF AUTHORITIES

**CASES**

*BFP v. Resolution Trust Corp.*,
  511 U.S. 531 (1993) ...................................................................................4

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)...............................................................................7

*Committee on Children's Television, Inc. v. General Foods Corps.*,
  35 Cal. 3d 197 (1983)................................................................................5

*DeLeon v. Wells Fargo Bank, N.A.*,
  729 F. Supp. 2d 1119 (N.D. Cal. 2010) ...................................................2

*Hackethal v. Nat'l Cas. Co.,*
  189 Cal. App. 3d 1102 (1987)...................................................................5

*Howard v. American Nat. Fire Ins. Co.*,
  187 Cal. App. 4th 498 (2010)....................................................................6

*Humboldt Sav. Bank v. McCleverty*,
  161 Cal. 285 (1911)..................................................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...................................................................8

*Korea Supply Co. V. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003).............................................................................7

*Maryland Cas. Co. v. Pacific*,
  312 U.S. 270, 272 (1941) .........................................................................11

*McKell v. Washington Mut., Inc.*,
  12 Cal. App. 4th 1457 (2006).....................................................................2

*People v. Casa Blanca Convalescent Homes Inc.*,
  195 Cal. App. 3d 509 (1984)......................................................................7

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
  160 Cal. App. 4th 638 (2008).....................................................................8

**CASE NO. 2:12-cv-09661-PA (RZx)**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER. APC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Saunders v. Superior Court,*

  27 Cal. App. 4th 832 (1994).................................................................................7

*Vess v. Ciba-Geigy Corp.,*

  317 F.3d 1097 (9th Cir. 2003).............................................................................8

**STATUTES**

15 U.S.C. § 1601 .................................................................................................7

28 U.S.C. § 2201(a) ..........................................................................................11

Cal. Code Civ. Proc. § 761.010 .......................................................................11

**REGULATIONS**

12 C.F.R. § 560.2(c)........................................................................................2, 4

**TREATISES**

4 Miller & Starr, Cal. Real Estate (2d ed. 1989)

  Deeds of Trust & Mortgages § 9:154, p. 508-509, fn. 86....................................10

Res.2d Contracts, § 205 .......................................................................................6

iii

**CASE NO. 2:12-cv-09661-PA (RZx)**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER. APC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  **1.    INTRODUCTION**

3       On December 7, 2012, Plaintiff filed a first amended complaint ("FAC")

4  after considering Defendant's motion to dismiss.  Defendant has nevertheless filed

5  another motion to dismiss in response.

6  **2.    STATEMENT OF FACTS**

7       Plaintiff is the owner of the real property located at 19825 Sunset Vista

8  Road, Walnut, CA 91789.  ("Subject Property").  (FAC ¶ 3.)  On January 2, 2008,

9  Plaintiff obtained an adjustable rate mortgage for the principal sum of $860,000.00

10 from WORLD SAVINGS secured by a deed of trust.  (FAC ¶¶ 15, 19.)  The deed

11 of trust was recorded against the Subject Property as instrument no. 2008-0002822.

12 (FAC ¶ 19.)

13      Plaintiff sought a 30-year fixed-rate mortgage loan.  (FAC ¶ 15.)  The Agent

14 represented that Plaintiff would receive a 30-year fixed-rate mortgage loan.  (FAC

15 ¶ 15.)  Plaintiff was unaware and the Agent did not disclose that the loan had a

16 finance charge of $1,665,027.56 and the principal balance of the loan would

17 increase dramatically.  (FAC ¶ 16.)

18      As a result of the unknown and onerous loan terms, Plaintiff was inevitably

19 forced to seek a loan modification.  (FAC ¶ 17.)  Plaintiff contacted WACHOVIA

20 to inquire about loan workout options and was directed to submit a loan

21 modification application.  (FAC ¶ 17.)  Plaintiff submitted a loan modification on

22 six separate occasions and was denied on each occasion, not receiving a material

23 reason for her denials.  (FAC ¶ 17.)  WELLS has since recorded a notice of default

24 and notice of trustee's sale and a sale date of the property is now pending.  (FAC ¶

25 18.)

26      Plaintiff's loan is a Pick-a-Payment loan that is among those that have been

27 the subject of an ongoing investigation by the California Department of Justice to

28 determine if they violated California law, including sections 17200 and 17500 of

1

CONSUMER LITIGATION LAW CENTER. APC

1   the California Business and Professions Code.  (FAC ¶ 20.)  WELLS FARGO

2   recognized the harm of these loans and accepted responsibility for them and

3   entered into a settlement agreement with the California Attorney General's Office.

4   (FAC ¶ 20.)  As stated herein, WELLS FARGO has ignored its obligations under

5   the terms of this settlement and continues to move forward with the trustee's sale

6   of Plaintiff's property.  (FAC ¶ 20.)

7   **3.      PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY HOLA**

8          Defendant contends that Plaintiff's claims are preempted by the Home

9   Owners Loan Act ("HOLA").  HOLA however, is not as expansive as Defendant

10  contends.  State laws that are not preempted by HOLA include those that only

11  incidentally affect the lending operations of federal savings associations or are

12  otherwise consistent with the occupation of the field of federal savings

13  associations, including contract law, real property law, tort law, and laws that

14  further a vital state interest.  12 C.F.R. § 560.2(c).

15         First, Defendant contends that Plaintiff's claims stemming from the loan

16  origination are barred by HOLA, primarily because they fall under terms of credit,

17  the lenders disclosure and advertising, and the origination of the loan.  However,

18  fraud and UCL claims are governed almost exclusively by state law and do not

19  raise issues of great federal interest.  *McKell v. Washington Mut., Inc.*, 142 Cal.

20  App. 4th 1457, 1487 (2006).  There is no reason to suppose that Congress intended

21  to preempt common law tort claims, effectively granting banks immunity from

22  such state law claims.  *Id.*  Further, a plaintiff's ability to sue the bank for fraud

23  does not interfere with what the bank may do, it simply insists that a bank cannot

24  misrepresent how it operates or utilize fraudulent methods in its operations.  *Id.*

25  Laws of general applicability that do not directly affect a national bank's lending is

26  not preempted by HOLA.  *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d

27  1119, 1127 (N.D. Cal. 2010).

28  / / /

CONSUMER LITIGATION LAW CENTER. APC

1    Second, Defendant contends that Plaintiff's claim for unfair and deceptive

2    business practices in the loan servicing is preempted by HOLA as it encompasses

3    claims based on the processing or servicing of a loan.  UCL claims are governed

4    almost exclusively by state law and do not raise issue of great federal interest and

5    there is no reason to suppose that Congress intended to preempt common law tort

6    claims.  *McKell*, 142 Cal. App. 4th at 1457.   Plaintiff's claims under the UCL are

7    based on contract, tort, and laws furthering a vital state interest.  *See* 12 C.F.R.

8    §561.2(c).  Such laws are not preempted if they only incidentally affect lending. *Id.*

9    "Courts have…interpreted *Silvas* to not preempt all state law causes of action

10   arising out of loan modification and/or foreclosure proceedings, but only those that

11   impose new requirements on the lender." *Rumbaua v. Wells Fargo Bank, N.A.,* No.

12   C 11-1998 SC, 2011 WL 3740828, at 7 (N.D. Cal. Aug. 25, 2011).   Where

13   Plaintiff's claims have centered on a bank's failure to make "adequate disclosure

14   of fees, interest rates, or other loan terms," or "inadequate notice of various rights

15   and procedures during the foreclosure process," those claims have been preempted

16   because they "would effectively impose requirements that banks include specific

17   information in loan documents or provide specific notices during foreclosure." *See*

18   *DeLeon v. Wells Fargo Bank, N.A.,* No. 10-CV-01390-LHK, 2011 WL 311376, at

19   6 (N.D. Cal. Jan. 28, 2011).   But a claim is not preempted where plaintiffs

20   challenge "defendant's general conduct of stalling [and] avoiding his requests…,

21   not the substance of its lending practices such as terms of credit, disclosures, or

22   advertising," because the state-law claims would only incidentally affecting

23   lending operations. *Avila v. Wells Fargo Bank*, No. C 12-01237 WHA, 2012 WL

24   295117, at 11 (N.D. Cal. July 19, 2012).

25   Third, Defendant contends that Plaintiff's claim for unfair and deceptive

26   business practices in failing to follow foreclosure procedures is preempted by

27   HOLA as it encompasses the circumstances under which a loan may be called due

28   and payable upon the passage of time or specific event external to the loan.  (FAC

CASE NO. 2:12-cv-09661-PA (RZx)
OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

¶ 110.)  As stated prior, UCL claims are governed by state law and do no raise issues of great federal interest.  Additionally, foreclosure is a matter of real estate property law and real property law has traditionally been the exclusive domain of the states.  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541-42 (1993).  Real property is one of the areas that state laws are not preempted by HOLA.  12 C.F.R. § 560.2(c).

**4.     PLAINTIFF STATED A CLAIM FOR FRAUD.**

    **A.     Plaintiff's Fraud Claim is Timely.**

The statutory bar for fraud is three years.  Cal. Code Civ. Proc. § 338(d).  The cause of action, though, is not deemed to have accrued until the discovery of the facts constituting the fraud by the aggrieved party.  *Id.*  As a result of the compounding half-truths, misrepresentations, omissions, and Defendant's failure to provide the loan documents in a timely fashion, Plaintiff was not aware of the actual loan terms and Defendant's fraudulent actions.

In *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 249 (2011), the court determined that the plaintiffs had adequately pled that the material facts were concealed by inaccurate representations and half-truths.  Further, the court determined that a fraud claim may be established by showing that the defendant intentionally used its forms to deceive borrowers by hiding the actual interest rates and monthly payments sufficient to amortize the loan in the complexity of the contract terms.  *Id.*  The court reasoned that "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Id.*

Similarly here, the complexity of the loan documents concealed the loan terms from Plaintiff.  As a result, Plaintiff was only able to discover the acts committed herein upon notice of the substantial increase in the principal amount of the loan from the original amount of $860,000.00 to $951,811.38 on November 5, 2009 when receiving the notice of trustee's sale.  (FAC ¶ 66.)  Plaintiff had no

4

CONSUMER LITIGATION LAW CENTER. APC

1    knowledge of the negative amortization component of the loan and had no way of

2    discovering the undisclosed loan terms prior because there was no event sufficient

3    to put her on reasonable notice.  (FAC ¶ 66.)

4            **B.**      **Defendant Misrepresented the Terms of the Loan.**

5          Under California law, the indispensable elements of a fraud claim include a

6    false representation, knowledge of its falsity, intent to defraud, justifiable reliance,

7    and damages.  *Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1111 (1987).

8    Less specificity is required when it appears from the allegations that the defendant

9    possesses full information concerning the facts of the controversy.  *Committee on*

10   *Children's Television, Inc. v. General Foods Corps.*, 35 Cal. 3d 197, 217 (1983).

11         Upon initiating the loan application process, Plaintiff specifically requested

12   a 30-year fixed-rate loan.  (FAC ¶ 67.)  The Agent, a World Savings employee

13   trained and coached by World Savings on how to sale these profitable loans do

14   unknowing mortgage seekers, assured Plaintiff that she qualified for and would

15   receive a 30-year fixed-rate loan.  (FAC ¶¶ 15, 67.)  The Agent filled out the loan

16   application over the phone and did not ask Plaintiff what her income was or to

17   provide any verification of her income.  (FAC ¶ 68.)  Plaintiff was then not

18   provided the loan documents until after the loan was signed and recorded.  (FAC ¶

19   70.)

20         The complexity of the loan documents effectively concealed the terms of the

21   loan and Defendant had superior knowledge of this fact, as well as knowledge of

22   the onerous terms themselves.  Defendant misrepresented the actual terms of the

23   loan and then failed to disclose them, including the loan had an annual percentage

24   rate of 7.703%, a finance charge of $1,665,027.56, and there would be a substantial

25   increase in the principal of the loan.  As in *Boschma,* Plaintiff's claim should

26   survive the initial pleading stage.

27   ///

28   ///

**CASE NO. 2:12-cv-09661-PA (RZx)**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER. APC

## 5.   <u>PLAINTIFF STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT</u>

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Res.2d Contracts, § 205.  The "[i]mplied promise requires each contracting party to refrain from doing anything to injure the rights of the other to receive the benefits of the agreement. . . ." *Howard v. American Nat. Fire Ins. Co.*, 187 Cal. App. 4th 498, 524 (2010).

Plaintiff contacted WELLS FARGO in December 2009 to inquire about loan workout options. (FAC ¶ 81.)  WELLS FARGO advised Plaintiff to submit a loan modification application.  (FAC ¶ 81.)  Plaintiff submitted a loan modification application and all the required documents.  (FAC ¶ 81.)  WELLS FARGO denied Plaintiff for a loan modification without providing a particular reason for her denial.  (FAC ¶ 81.)  By June 2010, Plaintiff had submitted three separate loan modification applications and all the required documents and was denied on each occasion.  (FAC ¶ 81.)

Plaintiff is informed and believes, and thereon alleges that she has applied for a loan modification on six separate occasions and been denied on each occasion.  (FAC ¶ 81.)  Plaintiff's attempts to obtain a loan modification were characterized by receiving multiple letters from WELLS FARGO seeking documentation that Plaintiff had already submitted to which Plaintiff complied with, and WELLS FARGO'S delays in providing Plaintiff with a final determination on her modification applications.  (FAC ¶ 81.)   Plaintiff has persistently attempted to fulfill all of her obligations under the agreement with WELLS FARGO, but Defendant intentionally thwarted these efforts by refusing to legitimately review Plaintiff's loan modification applications.  (FAC ¶ 84.) Defendant thereby wrongfully prevented Plaintiff from receiving the benefits of the loan agreement.  (FAC ¶ 84.)

///

6

**6.    PLAINTIFF STATED CLAIMS FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, ET SEQ.**

Unfair Competition Law ("UCL") defines "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practice."  *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The UCL covers a wide range of conduct.  *Korea Supply Co. V. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).

**A.    The Claims are Not Preempted**

As stated in section 3, *surpa*, Plaintiff's claims are not preempted.

**B.    Plaintiff Stated Claims for Violation of Business and Professions Code 17200 with Particularity**

**1.    Violation During the Loan Origination**

UCL incorporates other laws and treats violations of them as unlawful practices independently actionable; a violation of almost any law may serve as a basis for a UCL claim.  *Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838-39 (1994).  The acts of Defendant during the loan origination are in violation of California Civil Code section 1572 (actual fraud), as Defendant assured Plaintiff that she qualified for and would receive a 30-year fixed-rate mortgage and this assurance was designed to, and did in fact, induce Plaintiff to enter into a loan that was prejudicial to her financial situation and set her up for certain default so that Defendant could then profit.  (FAC ¶¶ 26-27.)

"[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer."  *People v. Casa Blanca Convalescent Homes Inc.,* 195 Cal. App. 3d 509, 530 (1984).  Defendant's misrepresentations to Plaintiff before she entered into the subject Pick-a-Payment loan were and are directly contrary to established policies promoting the informed use of credit, e.g., the policies embodied in 15 U.S.C. § 1601 ("It is the purpose of this subchapter to

*CONSUMER LITIGATION LAW CENTER. APC*

7

CONSUMER LITIGATION LAW CENTER. APC

1  assure a meaningful disclosure of credit terms so that the consumer will be able to

2  compare more readily the various terms available to him and avoid the

3  uninformed use of credit."). (FAC ¶ 28.)  Defendant's actions thereby (1) caused

4  substantial injury to Plaintiff, (2) had no countervailing benefit to consumers or to

5  competition that could possibly outweigh this substantial injury, and (3) caused

6  injury that could not have been avoided by Plaintiff because she trusted in

7  Defendant's assurances and Defendant engaged in such conduct to conceal their

8  misrepresentations from Plaintiff. (FAC ¶ 29.)

9      The fraudulent prong in UCL prohibits any activity that is likely to deceive

10  members of the public. *Puentes v. Wells Fargo Home Mortgage, Inc.,* 160 Cal.

11  App. 4th 638, 645 (2008).  Defendant engaged in fraudulent practices by assuring

12  Plaintiff during the loan application process that she would receive a 30-year

13  fixed-rate mortgage loan when Defendant had no intention of giving Plaintiff a

14  30-year fixed-rate mortgage loan. (FAC ¶ 32.)  Defendant instead placed Plaintiff

15  in a toxic loan that would injure Plaintiff resulting in the foreclosure of her home,

16  wherein only Defendant would ultimately benefit and profit.

### 2.      Violation During the Loan Servicing

18  To the extent a plaintiff alleges unfair business practices or acts that are not

19  fraudulent, those allegations need not satisfy Rule 9(b). *See Vess v. Ciba-Geigy*

20  *Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  "While fraud is not a necessary

21  element of a claim under the CRLA and [Section 17200] . . . a plaintiff may allege

22  a unified course of fraudulent conduct and rely entirely on that course of conduct

23  as the basis of that claim." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th

24  Cir. 2009).

25      In the course of their conduct, management, and oversight of servicing

26  Plaintiff's loan, Defendant engaged in a pattern of unfair and deceptive business

27  practices, specifically Defendant's conduct, management, and oversight of

28  Plaintiff's loan modification attempts. (FAC ¶ 42.)  Plaintiff contacted WELLS

8

FARGO seeking a loan workout option in December 2009.  (FAC ¶ 44.)  WELLS FARGO instructed Plaintiff to submit a loan modification application and Plaintiff did so.  (FAC ¶ 44.)  WELLS FARGO denied Plaintiff for a loan modification and did not provide a reason for the denial.  (FAC ¶ 44.)

Plaintiff has applied for a loan modification on approximately six separate occasions and denied each time without receiving a legitimate reason for the denials.  (FAC ¶ 45.)  Throughout her attempts to obtain a loan modification WELLS FARGO inundated Plaintiff with letters requesting information and stating that Plaintiff needed to update her information and was missing documentation.  (FAC ¶ 46.)  Plaintiff cooperated and submitted all requested documents, nevertheless, WELLS FARGO continued to assert that Plaintiff was missing documentation.  (FAC ¶ 47.)

The failure and refusal of Defendant to seek alternatives to foreclosure and to proceed to foreclose appears to be part of a company policy of seeking to deny contractual and stipulated benefits to Plaintiff despite the existence of a duty to offer such relief in good faith under California law.  (FAC ¶ 51.)

### 3.    Violation During the Foreclosure Process

Defendant's actions in pursuing foreclosure were deceptive and fraudulent in that they were based on the furtherance of illegal acts done at the time of the loan's origination.  (FAC ¶ 59.)  On or about July 30, 2009, WELLS FARGO through its trustee CAL-WESTERN recorded a notice of default on the subject property.  (FAC ¶ 60.)  Defendants then proceeded to record a notice of trustee's sale on November 5, 2009, May 6, 2011 and May 21, 2012.  (FAC ¶ 60.)  Defendants' conduct violated public policy embodied in California Civil Code section 2923.6 by failing to offer the borrower a loan modification or workout plan consistent with its contractual or other authority.  (FAC ¶ 62.)

### C.    The First Cause of Action is Not Time-Barred

As stated in section 3., *surpa*, Plaintiff's claim is not time-barred.

CASE NO. 2:12-cv-09661-PA (RZx)
OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

CONSUMER LITIGATION LAW CENTER. APC

CONSUMER LITIGATION LAW CENTER. APC

**7.     PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF**

### A.     Plaintiff Should Not Be Required to Allege Tender

There are recognized exceptions to the tender requirement.  Tender may not be required where the action attacks the validity of the underlying debt, since it would constitute an affirmation of the debt.  *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997).  Plaintiff's first claim alleges that this loan was procured by fraud. Plaintiff alleges numerous instances of misrepresentation and concealment in the origination of Plaintiff's loan, as discussed in 4.B. *supra.*  Plaintiff's fraud claim attacks the validity of the underlying debt.  In addition, Plaintiff's claims for Defendant's violation of Business and Professions Code sections 17200, et seq. in the origination of the loan attacks the validity of the underlying debt.  As such, alleging tender would constitute an affirmation of the debt, and invalidate Plaintiff's allegations in her FAC.

In addition, there is a general equitable exception that "tender may not be required where it would be inequitable to do so."  *Onofrio*, 55 Cal. App. 4th at 424 (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages § 9:154, p. 508-509, fn. 86.)  Tender may not be required if it would evidence injustice and hardship of the right to attack the sale if it were made dependent upon an offer to pay the whole debt.  *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911).  Here, it would be an injustice and hardship to require Plaintiff to tender the full loan amount of the loan in order to attack the sale.  Plaintiff's claims stem from a loan that arose from fraud and as a result Plaintiff obtained a loan that she could not afford.  It would be an injustice and hardship to then require Plaintiff to tender the full loan amount of that loan in order to attack the sale.

### B.     Plaintiff Stated a Claim for Declaratory Relief

"In the case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such

CONSUMER LITIGATION LAW CENTER. APC

1 | declaration." 28 U.S.C. § 2201(a).  An actual controversy exists if the facts
2 | alleged, under the circumstances, show that there is a substantial controversy
3 | between parties having adverse legal interests of immediacy and reality to warrant
4 | the issuance of a declaratory judgment. *Maryland Cas. Co. v. Pacific*, 312 U.S.
5 | 270, 272 (1941).

6 | An actual controversy has arisen and now exists between Plaintiff and
7 | Defendants concerning their respective rights and duties regarding the loan or the
8 | foreclosure sale.  (FAC ¶ 105.)  These disputes concern the ownership rights and
9 | the validity of the commencement of the foreclosure process.  (FAC ¶ 106.)
10 | Plaintiff contends that Defendants do not have the authority to foreclose upon and
11 | sell the property and is informed and believes, and thereon alleges that Defendants
12 | dispute this contention.  (FAC ¶¶ 107-08.)  As a result of the wrongful and
13 | unlawful foreclosure actions taken by Defendants, Plaintiff will sustain great and
14 | irreparable injury through the loss of her property.  (FAC ¶ 110.)

### C.   Plaintiff Stated a Claim for Quiet Title

An action for quiet title requires (1) a description of the property, (2) the title which the plaintiff seeks and the basis of the title, (3) the adverse claims to the title against which the plaintiff seeks a determination sought, (4) the date of which the determination is sought; (5) the prayer for the determination of the title which plaintiff seeks.  Cal. Code Civ. Proc. § 761.010.

Plaintiff seeks to quiet title of the property known as 19825 Sunset Vista Road, Walnut, CA 91789.  (FAC ¶ 97.)  Plaintiff seeks to quiet title as of July 30, 2009, the date the notice of default was recorded.  (FAC ¶ 98.)  Plaintiff seeks a judicial declaration that the title to the subject property is vested in Plaintiff alone as the title owner.  (FAC ¶ 100.)  Defendants do not have any legal ownership or interest in the subject property obtained through fraud and wrongful conduct, and failure to adhere to the strict statutory requirements to effectuate a foreclosure

11

CONSUMER LITIGATION LAW CENTER. APC

1  proceeding of the subject property, thus voiding the foreclosure proceedings.

2  (FAC ¶ 101.)

3       **D.    Each Equitable Claim has a Basis for Granting Relief**

4       Each equitable claim is based on the allegations of prior claims.   As

5  demonstrated elsewhere in this brief, those claims state a basis for relief.

6  **8.    CONCLUSION**

7       For the reasons set forth above, Plaintiff respectfully requests that the Court

8  deny Defendant's motion to dismiss.   In the alternative, Plaintiff requests that the

9  Court allow her leave to amend the complaint to allege additional facts sufficient to

10  plead any inadequately pled causes of action.

11

12  Dated:  January 7, 2013                        CONSUMER LITIGATION
                                                    LAW CENTER, APC
13

14

15                                          BY:  _/s/ September J. Katje_____

16                                               September Katje
                                                 Attorney for Plaintiff,
17                                               Martha Alvarez

18

19

20

21

22

23

24

25

26

27

28

12